Farid Faham Gamal GHALY, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 93–70926.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1995.

Decided July 6, 1995.

Ronald H. Bonaparte, Bonaparte & Joannes, Los Angeles, CA, for petitioner.

Mark C. Walters and Anthony W. Norwood, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: WALLACE, Chief Judge, HUG, and HAWKINS, Circuit Judges.

WALLACE, Chief Judge:

Ghaly petitions for review of the Board of Immigration Appeals's (Board) decision denying his applications for asylum and withholding of deportation. We have jurisdiction over this timely petition pursuant to 8 U.S.C. § 1105a(a). The petition is denied.

I

Ghaly is a native and citizen of Egypt and a member of the Coptic Christian faith. He entered the United States in 1981 on a J–1 Exchange Visitor Visa, which was issued in order to permit him to participate in a special program funded by the United States Agency for International Development (Agency).

The Agency paid for him to obtain a Masters Degree in public health from the University of California at Berkeley, subject to the condition that he return to Egypt. After receiving his degree, however, Ghaly chose not to return despite the expiration of his visa and his commitment to the Agency.

In 1985, deportation proceedings were initiated and Ghaly filed an application for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a), 1253(h). At an October 1987 hearing, Ghaly and others testified that Christians are subject to discrimination and even violence in Egypt due to their faith, and that Ghaly's medical career would suffer as a result. The immigration judge (IJ) admitted a March 1986 opinion of the State Department's Bureau of Human Rights and Humanitarian Affairs (Bureau), which described in some detail the situation in Egypt with respect to the treatment of religious minorities, and Coptic Christians in particular. The opinion stated that although Coptic Christians "face prejudice and occasional acts of individual discrimination from Egypt's Islamic majority, there is no evidence these acts are systematic, or that they are officially inspired or sanctioned." It further explained that although sectarian violence between Coptic Christians and Moslems flared in 1981, the Egyptian government responded by arresting about 1,400 Moslems and 100 Coptic Christians. After pointing out that the Egyptian government has tried and convicted persons accused of offenses against Coptic Christians and has attempted to ease tensions between Coptic Christians and Moslems, it went on to conclude that there is "no reason to believe that [Ghaly] would be subjected to official or any other form of persecution upon returning to Egypt ... or that such discrimination as the applicant might encounter would be so serious as to constitute persecution."

The IJ denied the request for asylum and withholding of deportation, but granted voluntary departure. The IJ found that Ghaly did not have a well-founded fear of persecution and did not face a clear probability of persecution, thereby making him ineligible for asylum and withholding of deportation, but refused to consider certain exhibits introduced by Ghaly to rebut the conclusions contained in the Bureau opinion.

Ghaly appealed to the Board. After six years of inexplicable delay, the Board also concluded in 1993 that Ghaly was ineligible for asylum and withholding of deportation, but granted voluntary departure. The Board relied heavily on the March 1986 Bureau opinion to conclude that Ghaly did not have a well-founded fear of persecution and did not face a clear probability of persecution if returned to Egypt. Unlike the IJ, however, the Board did consider the exhibits offered by Ghaly to rebut the conclusions contained in the Bureau opinion. The Board identified each document and concluded that the source of the information contained in them was unclear and stated that the Board has "given them the weight we deem appropriate under the circumstances."

## II

Section 208(a) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1158(a), gives the Attorney General discretion to allow political asylum to any alien the Attorney General determines to be a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). A refugee is defined as an alien unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* To establish eligibility on the basis of a "well-founded fear of persecution," the alien's fear of persecution must be both subjectively genuine and objectively reasonable. *Arriaga–Barrientos v. INS,* 925 F.2d 1177, 1178 (9th Cir.1991) (*Arriaga–Barrientos* ). "The objective component requires a showing by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Id.* at 1178–79. The applicant has the burden of making this showing. *Fisher v. INS,* 37 F.3d 1371, 1376 (9th Cir.1994) (*Fisher* ).

Section 243(h) of the Act, 8 U.S.C. § 1253(h), requires the Attorney General, subject to certain exceptions not relevant here, to withhold deportation "if the Attorney General determines that such alien's life or

freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." We have held that an alien is statutorily eligible for such relief if he or she demonstrates a "clear probability of persecution." *Arriaga–Barrientos,* 925 F.2d at 1178. This standard is generally more stringent than the "well-founded fear" standard applicable to requests for asylum, and can be met only by showing that it is more likely than not that the alien will be persecuted if deported. *Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993). Therefore, failure to satisfy the lesser standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of deportation as well. *Arriaga–Barrientos,* 925 F.2d at 1180. Thus, for purposes of this opinion, we will focus on whether Ghaly proved he was eligible for asylum.

■ The Board's factual determinations, including its finding of whether an applicant has demonstrated a "well-founded fear of persecution," are reviewed for substantial evidence. *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) *(Elias–Zacarias ).* We will reverse the Board only where the evidence is such that a reasonable factfinder would be compelled to conclude that the requisite fear of persecution existed. *Id.* at 481 & n. 7, 112 S.Ct. at 815 & n. 7. The Board's purely legal interpretations of the Act are reviewed de novo, but are generally entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Fisher,* 37 F.3d at 1376.

### III

■ Ghaly contends that the Board erred by relying on the March 1986 Bureau opinion. At the time of his hearing, the IJ was required to request a Bureau opinion on all asylum applications. 8 C.F.R. §§ 208.7, 208.10 (repealed). In 1990, the regulations were amended to provide that "[a]t its option, the [Bureau] may comment on an application [for asylum]." 8 C.F.R. § 208.11(a) (1990). If the Bureau chooses to comment on the application, it may, but is not required to,

provide certain particularized information such as: "(1) [a]n assessment of the accuracy of the applicant's assertions about conditions in his country of nationality ... and his own experiences; (2) [a]n assessment of his likely treatment were he to return to his country ...; [and] (3) [i]nformation about whether persons who are similarly-situated to the applicant are persecuted in his country ... and the frequency of such persecution." *Id.*

■ It is clear that the Board may rely on a Bureau opinion in determining whether an applicant is entitled to asylum. *See Elnager v. INS,* 930 F.2d 784, 789 (9th Cir.1991) *(Elnager ).* Ghaly contends, however, that the Board should not have relied on the Bureau opinion in his case because the opinion did not include the particularized assessments made available under the 1990 version of 8 C.F.R. § 208.11(a).

The 1990 version of the regulation provides that the Bureau "may" comment on certain matters but does not require the Bureau to provide any particular assessments or information. *See* 8 C.F.R. § 208.11(a) (1994). Thus, Ghaly had no right to a Bureau opinion that contained such assessments.

■ Ghaly further argues that even if he had no right to a Bureau opinion that provided the particularized assessments contained in section 208.11(a), the Board nevertheless erred by considering an opinion that did not provide such information. However, section 208.11 contains no indication that it is intended to limit the evidence that may be considered by the IJ or the Board. To the contrary, subsection (c) states that *"[a]ny* Department of State comments provided under this section shall be made a part of the asylum record." 8 C.F.R. § 208.11(c) (1994) (emphasis added). Aliens are protected against incomplete or inaccurate Bureau opinions by the requirement that they be provided with a copy of any such opinion and be given an opportunity to respond prior to the issuance of an adverse decision. *See id.* It is therefore unnecessarily inefficient to require the Board to remove from consideration any pre–1990 Bureau opinions that were properly made part of the record and considered by the IJ before the enactment of

the new regulations. We conclude that the Board did not err by considering the Bureau opinion in this case, though the age of such a report may considerably limit its evidentiary value.

## IV

 Ghaly contends that the IJ's refusal to consider the exhibits he offered to rebut the Bureau opinion violated 8 C.F.R. § 208.11(c) (1994), which requires that an asylum applicant be given the opportunity to respond to a Bureau opinion. The IJ's refusal to consider the exhibits is irrelevant, however, because the Board considered them in conducting its de novo review. Where the Board exercises its power to conduct a de novo review of the record, our review is limited to the decision of the Board except to the extent that the IJ's opinion is expressly adopted by the Board. *Alaelua v. INS*, 45 F.3d 1379, 1381–82 (9th Cir.1995); *Castillo v. INS*, 951 F.2d 1117, 1120 (9th Cir.1991) (*Castillo* ). The Board "has the power to conduct a de novo review of the record, to make its own findings, and independently to determine the legal sufficiency of the evidence." *Elnager*, 930 F.2d at 787. Any error committed by the IJ will be rendered harmless by the Board's application of the correct legal standard. *Id.; Shirazi–Parsa v. INS*, 14 F.3d 1424, 1427 (9th Cir.1994). Thus, even if the IJ erred by refusing to consider Ghaly's exhibits, this error was rendered harmless by the Board's subsequent consideration of the exhibits in conducting its de novo review.

 Ghaly further contends that the Board failed to explain sufficiently the weight it accorded these exhibits. When reviewing the Board's determination that an alien is ineligible for asylum, we do not allow the Board to rely on "boilerplate" opinions "which set out general legal standards yet are devoid of statements that evidence an individualized review of the petitioner's circumstances." *Castillo*, 951 F.2d at 1121. Instead, the Board's opinion must contain a statement of its reasons for denying the petitioner relief adequate for us to conduct our

review, and we must remand for clarification if the Board fails to provide an adequate statement of the reasons for its decision. *Id.* However, while we will not tolerate "boilerplate" opinions, we will not impose unnecessarily burdensome or technical requirements on the Board.

In requesting us to allow his petition because the Board did not specifically indicate the amount of weight it accorded his exhibits, Ghaly asks us to hold the Board to an unnecessary and impractical standard. In making essentially factual determinations such as whether an alien has a well-founded fear of persecution if returned to his homeland, the Board cannot be expected to explain how much weight it places on every piece of relevant evidence. Nor need the Board refer to each exhibit. All that we require is that the Board provide a comprehensible reason for its decision sufficient for us to conduct our review and to be assured that the petitioner's case received individualized attention. *See id.*

In this case, the Board's opinion is clearly adequate. The Board stated that it had reviewed the exhibits and had "given them the weight we deem appropriate under the circumstances." This statement is adequate to inform us in conducting our review that the Board did not commit the error that the IJ allegedly made in failing to consider the exhibits. The Board was under no duty to indicate precisely what amount of weight it accorded these exhibits. Although the Board did not specifically discuss the contents of these exhibits, the Board's opinion does refer to Ghaly's testimony and to an Amnesty International report provided by Ghaly. The Board's opinion also stated that Ghaly had "submitted a number of background documents in support of his claim of a well-founded fear of persecution," and explained that they "established certain discrimination against Coptic Christians, and certain instances of violence against them, [but] do not persuasively disclose Egyptian Government complicity."

Finally, the Board explained that the Bureau opinion indicated that the government neither sanctioned nor practiced religious discrimination, and that while sectarian vio-

lence between Coptic Christians and Moslems erupted in 1981, the Egyptian government responded effectively by arresting hundreds of the individuals responsible. The Board stated that while Ghaly's testimony and other evidence suggested that Ghaly and other Coptic Christians had been subjected to discrimination in the past due to previous sectarian violence, there was no evidence to rebut the Bureau opinion's conclusion that Ghaly would not likely be subjected to persecution in the future either by the Egyptian government or by other Moslem groups. This statement of reasons for concluding that Ghaly lacked a well-founded fear of persecution if returned is adequate.

## V

█ Ghaly maintains that the Board's conclusion that he does not have a well-founded fear of persecution is not supported by substantial evidence. As the Supreme Court made clear in *Elias–Zacarias*, our substantial evidence review of the Board's findings that Ghaly has failed to establish a well-founded fear of persecution is extremely deferential. *See Prasad v. INS*, 47 F.3d 336, 338–39 (9th Cir.1995) (explaining substantial evidence review after it was clarified by *Elias–Zacarias*). The burden on Ghaly is a heavy one. In order to obtain reversal, a petitioner contending that the Board's findings are erroneous must establish that the evidence "not only *supports* that conclusion, but *compels* it." *Id.* at 338, *quoting Elias–Zacarias*, 502 U.S. at 480 n. 1, 112 S.Ct. at 815 n. 1 (emphasis in original). Ghaly must demonstrate "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id., quoting Elias–Zacarias*, 502 U.S. at 483, 112 S.Ct. at 816. Phrased differently, Ghaly must demonstrate that any reasonable factfinder "would have to conclude" that he has a well-founded fear of persecution. *Id., quoting Elias–Zacarias*, 502 U.S. at 480, 112 S.Ct. at 815.

Ghaly has failed to meet this high burden. The evidence introduced in this case, including the Bureau opinion and Ghaly's exhibits, does indicate that Coptic Christians are subject to discrimination in Egypt. But a showing of discrimination is insufficient.

█ Although the term "persecution" is not defined in the Act, we have explained it as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Id.* at 339 (quotations and citations omitted). We have cautioned that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Fisher*, 37 F.3d at 1380, *quoting Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993) (treatment of feminists in Iran is not so harsh as to amount to "persecution"). Discrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to "persecution" within the meaning of the Act. *See Bastanipour v. INS*, 980 F.2d 1129, 1133 (7th Cir.1992) (distinguishing persecution "from mere discrimination or harassment"). The Board has held that discrimination can, in extraordinary cases, be so severe and pervasive as to constitute "persecution" within the meaning of the Act. *See Matter of Salama*, 11 I & N Dec. 536 (BIA 1966) (government campaign causing departure of 37,000 Jews and urging boycott of Jewish doctors and dropping of Jewish professionals from professional societies constituted persecution). In a case such as the one before us, however, where private discrimination is neither condoned by the state nor the prevailing social norm, it clearly does not amount to "persecution" within the meaning of the Act. The evidence does not compel the conclusion that Ghaly has a well-founded fear of persecution. Thus, the Board's findings must be upheld.

## VI

█ Finally, Ghaly contends that we should remand this case for the Board to consider newly discovered evidence, including a *New York Times* article and evidence that Ghaly qualifies for suspension of deportation. *See* 8 U.S.C. § 1254(a)(1) (requirements for suspension of deportation); *Toquero v. INS*, 956 F.2d 193, 194 (9th Cir.1992) (same). We have authority to order an agency to consider additional evidence if the petitioner shows that the evidence is material

and "there were reasonable grounds for failure to adduce the evidence before the agency." 28 U.S.C. § 2347(c). Aside from this limited exception, however, we will not supersede the ordinary procedure whereby the petitioner must submit a motion to reopen to the Board. *Roque–Carranza v. INS,* 778 F.2d 1373, 1374 (9th Cir.1985), *citing Ramirez–Gonzalez v. INS,* 695 F.2d 1208, 1213 (9th Cir.1983). Ghaly has not established reasonable grounds for failing to present similar evidence to the Board.

The only apparent reason that Ghaly requests us to remand his case to the Board rather than filing a motion to reopen with the Board is that a motion to reopen does not automatically stay execution of an outstanding deportation order. *See Escobar–Ramos v. INS,* 927 F.2d 482, 486 (9th Cir.1990). We hold that this is an insufficient reason and therefore deny Ghaly's request that we remand his case to the Board for the consideration of new evidence. He must follow the proscribed procedures and, if he chooses to do so, bring a motion to reopen before the Board.

PETITION DENIED.