122 F.3d 1070
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Romulo Domdom CORTEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICES, Respondent.
 No. 96-70993.
 United States Court of Appeals, Ninth Circuit.
 Submitted August 25, 1997.**
Decided Aug. 27, 1997.
 
 1
 On Petition for Review of an Order of the Board of Immigration Appeals, No. Aak-aql-cnh.
 
 
 2
 Before: SCHROEDER, FERNANDEZ and RYMER, Circuit Judges
 
 
 3
 MEMORANDUM*
 
 
 4
 Romulo Domdom Cortez, a native and citizen of the Philippines, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal of the immigration judge's ("IJ") order denying his applications for asylum and withholding of deportation under 8 U.S.C. § 1158(a) and 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.
 
 
 5
 Cortez contends that the BIA abused its discretion in finding that he failed to establish a well-founded fear of future persecution from the New People's Army ("NPA") on account of his political opinion. We disagree.
 
 
 6
 To be eligible for asylum, the applicant must demonstrate that he has suffered past persecution, or has an objectively reasonable fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A). For political asylum, the applicant's burden is to establish that the persecution is because of his political opinion. See INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992).
 
 
 7
 To support his application, Cortez provided the following testimony: From 1987 to 1991, Cortez worked as a real property tax appraiser with the Municipal Assessor's Office in the Candon Municipality, Ilocos Sur Province in the Philippines. In 1989, NPA members went to his home, suggesting that he join the NPA. They asked him to provide them with information, because he had a list of taxpayers and knew who was wealthy in the municipality. Thereafter, NPA members came to Cortez' home and his office on several occasions, but Cortez refused to join the NPA or to provide the information they sought. In 1991, NPA members told Cortez that if he did not cooperate, they would kill him. Cortez concedes, however, that the main reason the NPA was interested in him was because he had access to taxpayer information. It was not until his second or third meeting with them that he told them he was a member of the Kabataan Barangay organization, and it was not until after the NPA threatened him that he told them he disagreed with their politics. Cortez then applied for a leave of absence from his job and moved to Manila. In 1992, NPA members again threatened to kill him, so he left the Philippines. In addition to his testimony, Cortez provided several letters from friends, stating that NPA members are still looking for him in Ilocos Sur Province.
 
 
 8
 We agree with the BIA that Cortez failed to meet his burden of establishing past persecution by the NPA on account of his political opinion, rather than on account of his refusal to provide the NPA with taxpayer information. The fact that the NPA threatened him after he refused to cooperate is not by itself sufficient to show that the NPA acted because of his political views. See Sangha v. INS, 103 F.3d 1482., 1487 (9th Cir.1997) (citation omitted). We also conclude that substantial evidence supports the BIA's conclusion that Cortez failed to establish an objectively reasonable fear of future persecution. See Ghaly v. INS, 58 F.3d 1425, 1430 (9th Cir.1995). According to the State Department report submitted into evidence without objection, conditions in the Philippines have changed and the NPA's force has been seriously reduced. See Kazlauskas v. INS, 46 F.3d 902, 906 n. 3 (9th Cir.1995) (stating that fundamental political changes are highly relevant to likelihood of future persecution).
 
 
 9
 Because Cortez failed to establish eligibility for asylum, he necessarily failed to meet the more stringent standard for withholding of deportation. See Ghaly, 58 F.3d at 1429.
 
 
 10
 PETITION FOR REVIEW DENIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3