131 F.3d 147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Santiago Valdez LATONIO, Jeannette Vitan Latonio, Diana Joy
Latonio, Dennis Dexter Latonio, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 96-70994, Abh-cxz-wkt, Agj-miw-njt, Akt-ony-hoz, Aqj-hgd-sps.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 7, 1997.**
Decided Nov. 25, 1997.
 
 MEMORANDUM*
 Before: WOOD, JR.*** , RYMER, and TASHIMA, Circuit Judges.
 
 
 1
 Petitioners, Santiago Latonio, his wife and two children, are Philippine citizens who entered the United States between April and December 1991 as visitors, but stayed beyond their authorized visitation dates. After deportation proceedings were brought against them, Petitioners applied for asylum and withholding of deportation on grounds of both class and political persecution. The immigration judge (IJ) denied Petitioners' application for asylum and withholding of deportation but granted them the opportunity to voluntarily depart the country. The Board of Immigration Appeals upheld and adopted the IJ's decision and dismissed Petitioners' appeals on October 29, 1996. Petitioners appeal, contending that the IJ's decision to deny asylum was not supported by substantial evidence. We affirm.
 
 
 2
 Petitioners are citizens of the Philippines. The principal Petitioner, Santiago Latonio entered the United States with his two children, Diana Joy and Dennis, on or about December 17, 1991, as non-immigrants visiting for pleasure. His wife, Jeannette, had previously entered on April 16, 1991. After overstaying their authorized visitation date the Immigration and Naturalization Service (INS) instituted deportation proceedings. Conceding they were deportable, Petitioners requested asylum or withholding of deportation. Petitioners testified that they feared returning to the Philippines because they feared harm from the New People's Army (NPA), a Philippine communist organization.
 
 
 3
 In 1986, Mr. Latonio unfortunately purchased a home in Cavite, Philippines, an area known as "the killing field" because of several alleged military and NPA killings in the area. Sometime in December of 1986, Mr. Latonio was met by three NPA members outside his home. Mr. Latonio then decided to speak with the local barrange captain in their area to discuss his fear of the NPA.
 
 
 4
 Subsequently, Mrs. Latonio befriended a neighbor woman who, unknown to Mrs. Latonio, also happened to be a local NPA commander or leader. In July of 1987, Mr. Latonio received a letter from the NPA requesting payment of a 10,000 pesos revolutionary tax. Mr. Latonio refused to pay and once again proceeded to the local captain. The Captain refused to provide any protection unless Latonio first paid protection money. Threatening to report the Captain to the Provincial authorities, Mr. Latonio refused to pay him the protection money. Shortly thereafter Mr. Latonio's home was stoned, allegedly by the Captain's twenty-year old nephew.
 
 
 5
 In October of 1989, the Captain's nephew allegedly threatened Mr. Latonio's second grade son that he would tip off the NPA about Mr. Latonio and his family. In November of 1989, Mrs. Latonio's former neighbor friend, who was also the local NPA commander, visited the Latonios' home with her fellow NPA associates. When Mrs. Latonio refused to allow her to come in, the woman and her associates fired upon Mrs. Latonio who fortunately was able to safely re-enter her house. Mr. Latonio moved his wife and children to his sister in-law's home shortly after this incident. Subsequently, Mr. Latonio moved to an apartment closer to work, where he suspected he was under NPA surveillance.
 
 
 6
 The Latonios then made several visits to the United States between 1990 and 1991. Mr. Latonio stated that his sister-in-law continually received phone calls from the NPA seeking his whereabouts. Mr. Latonio believes that if he returns to the Philippines he will be harmed by the NPA.
 
 
 7
 Although finding the Petitioners credible, the IJ found that they had failed to demonstrate that the harm they suffered rose to the level of persecution on account of one of the five statutory grounds required for asylum, enumerated in § 101(a)(42)(A) of the Immigration and Naturalization Act (the "Act"), 8 U.S.C. § 1101(a)(42)(A). Specifically, the IJ found that, despite the NPA's extortion demands and threats, the Petitioners had not established they had suffered past persecution or had a well-founded fear of persecution on account of either their membership in a particular social group, wealthy members of the upper class, or their political opinions.
 
 
 8
 The IJ denied the Petitioners' request for asylum, concluding that Petitioners had not established past persecution or a well-founded fear of persecution. On appeal, the BIA stated in its order that it affirmed the decision of the IJ based upon and for the reasons set forth in that decision.
 
 
 9
 On petition for review, Petitioners assert that the decision of the BIA was not supported by substantial evidence. We review decisions regarding asylum or withholding of eligibility deferentially and will uphold the factual determinations regarding past persecution and a well-founded fear of future persecution if they are supported by substantial evidence. Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (en banc). Unless Petitioners present evidence which would compel a reasonable fact finder to find past persecution or a well-founded fear of future persecution on account of one of the five statutory grounds, we must uphold the findings of the BIA. Id. Since the BIA adopted the IJ's findings and reasoning, this court reviews the IJ's decision as if it were the opinion of the BIA. Alaelua v. INS, 45 F.3d 1379, 1381-1382 (9th Cir.1995).
 
 
 10
 In order to be entitled to asylum an alien must qualify as a refugee under 8 U.S.C. § 1101(a)(42). An alien may establish refugee status by establishing past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Id. Under § 208(a) of the Act, 8 U.S.C. § 1158(a), aliens must bring forth specific and objective facts supporting an inference of past persecution. See INS v. Cardoza-Fonseca, 480 U.S. 421 (1987). To establish a well-founded fear of persecution an alien must satisfy both subjective and objective standards. Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995). The subjective requirement merely requires a showing that the alien's fear is genuine. Id. "The objective component requires a showing of credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution." Id. The alien bears the burden of proving he qualifies for asylum or withholding of deportation. 8 C.F.R. § 208.13(a); Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986).
 
 
 11
 Petitioners assert that the BIA erred in finding that they had not been persecuted on account of their membership in a particular social group or their political opinion. They claim that NPA extortion demands and threats constituted persecution on account of their status as wealthy members of the upper class and/or their beliefs in democracy. The IJ found that these threats and extortion attempts did not rise to the level of persecution contemplated by the Act because Petitioners had failed to demonstrate the acts were on account of one of the five statutory grounds.
 
 
 12
 In particular, the IJ found the evidence failed to establish that the NPA was demanding money from persons who had good jobs because of their "political views or any other of the statutory grounds." The IJ found that the mere existence of a generalized political motive on the part of the NPA to extort money from the Petitioners and others did not establish persecution on account of the Petitioners' political opinions.
 
 
 13
 The IJ supported her decision by several findings. First, there were at least two substantial periods of time during the alleged persecution when Mr. Latonio moved his wife and children back and forth between his home in Cavite and his sister-in-law's home during which no NPA threats were directed at the Petitioners. The State Department's report on conditions in the Philippines indicated that NPA activities had been substantially reduced and that it was unlikely that NPA activity would be directed at the Petitioners should they return. The evidence showed that the NPA was demanding money from persons from a desire to support its survival and promotion of communist ideals rather than an interest in persecuting persons with particular political opinions. Finally, Petitioners all entered the United States as non-immigrant visitors and, at the time of entry, Mr. Latonio indicated to the consul that he would be returning to the Philippines. He never told them about his fears of persecution. Thus, we find that the IJ's findings are based upon substantial evidence and that the Petitioners failed to meet the statutory requirements for asylum.
 
 
 14
 In light of the fact that Petitioners have not demonstrated they suffered past persecution or a well-founded fear of future persecution, their request that deportation be withheld must be denied. The standard for withholding deportation is even more stringent than the standard for asylum. See Fisher, 79 F.3d at 961.
 
 
 15
 PETITION FOR REVIEW DENIED AND DECISION AFFIRMED
 
 
 
 **
 It has been determined that this case is suitable for decision without argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 **
 * The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation