UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

ISAAC MAURO ESPINOZA, a/k/a Isaac
Morrow Espinoza; CAROLINA
CACSIRE ESPINOZA; CAROLINA INES
ESPINOZA; CARLOS ENRIQUE ESPINOZA;
ISAAC MAURO ESPINOZA, a/k/a Isaac
Morrow Espinoza, Jr.; JANETH SUSSY

ESPINOZA,
Petitioners,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1510

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-378-079, A72-378-135, A72-378-136, A72-378-137,
A72-378-138, A72-378-139)

Submitted: September 29, 1998

Decided: November 12, 1998

Before MURNAGHAN, ERVIN, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard S. Bromberg, Washington, D.C., for Petitioners. Frank W.
Hunger, Assistant Attorney General, Mark C. Walters, Assistant

Director, Kristen A. Giuffreda, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Isaac Mauro Espinoza ("Espinoza"), along with his wife and children, seek review of the order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's deportation order. Because we find that Espinoza has failed to establish that he was persecuted in Peru, or that he has a well-founded fear of persecution on account of his political opinion if he returns to Peru, we deny the petition.

Espinoza and his family are natives and citizens of Peru who entered the United States in March 1989 as tourists permitted to remain no longer than six months. The Espinozas, however, remained in the United States beyond this six-month period and, for this reason, the Immigration and Naturalization Service charged them as deportable aliens. The Espinozas admitted deportability and asked for asylum in the United States. In September 1995, before an immigration judge, Espinoza testified in support of their asylum applications. His experiences in Peru form the basis of the Espinoza family's asylum claims.

Espinoza testified that he was a public accountant with a company in Lima, Peru, for approximately twenty years. During that time, he was involved in numerous professional and management institutions, including the Board of Public Accountants in Lima, the Chamber of Commerce in Lima, the National Association of Industries, the National Confederations of Businessmen, and Action Supmelcana. He stated that these organizations supported democratic government and were considered enemies of the Shining Path guerilla movement.

2

Espinoza further testified that, beginning in 1987, he received threats from the Shining Path. He stated that the Shining Path wanted him to join their campaign against Peru's democratic government and threatened to destroy his family, property, business, and houses if he refused. Because of these threats, Espinoza resigned from his position as a public accountant and moved his family to southern Peru, where he formed his own company. However, Espinoza stated that, while in southern Peru, the threats intensified and he personally knew one person whom the Shining Path assassinated. Espinoza and his family left Peru in March 1989. He testified that if he returns to Peru, he will experience the same problems that he was exposed to before he left.[1]

The immigration judge (the "IJ") denied the Espinozas' applications for political asylum and withholding of deportation. The BIA affirmed the IJ's determinations. The BIA concluded that threats Espinoza received did not rise to the level of persecution and that Espinoza lacked "an objective, well-founded fear of persecution from the Shining Path" should he return to Peru.[2] The Espinozas appeal, contending that the BIA's determinations are not supported by substantial evidence.

Our scope of review of BIA decisions is narrow. "The Supreme Court has stated that we must uphold the BIA's decision if it is supported by substantial evidence from the record as a whole. . . . This narrow standard of review recognizes the respect we must accord both the BIA's expertise in immigration matters and its status as the Attorney General's designee in deportation decisions."[3]

To be eligible for asylum, an alien must meet the definition of "refugee" as defined in the Immigration and Nationality Act (the "INA"). Under the INA, a refugee is any person who is unable to return to his or her country because of "[past] persecution or a well-founded fear of persecution on account of race, religion, nationality, membership

_____

[1] Two of Espinoza's children also testified at the hearing. Both expressed fear of returning to Peru.
[2] Administrative Record ("A.R.") at 5.
[3] **Huaman-Cornelio v. BIA**, 979 F.2d 995, 999 (4th Cir. 1992) (citation omitted).

3

in a particular social group, or political opinion .. . ."**4** Espinoza contends that the BIA's determination that he was not persecuted in the past and that he did not have a "well-founded" fear of persecution if he returns to Peru are not supported by substantial evidence. We address each in turn.

First, Espinoza argues that the Shining Path persecuted him when he was in Peru. He contends that the Shining Path threatened him because of his membership in numerous professional and management organizations which opposed the guerilla group. Espinoza claims that his family was terrorized because he refused to join the Shining Path's struggle against the Peruvian government based on his political opinion.

We agree with the BIA that, while regrettable, "the harassment that [Espinoza] received in the form of threats does not rise to the level of persecution."**5** Although the INA does not define "persecution," other circuits have refused to interpret the word expansively. As the Third Circuit stated in <u>Fatin v. INS</u>,**6** "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."**7** Similarly, the Ninth Circuit has cautioned that "`persecution is an extreme concept that does not include every sort of treatment our society regards as offensive.'"**8** In the instant case, aside from threats, which were never acted upon, neither Espinoza nor his immediate family ever had any encounters with the Shining Path. Therefore, we do not believe that the case law supports a finding that these threats constituted persecution.

Espinoza also contends that substantial evidence does not support the BIA's determination that he failed to demonstrate a well-founded fear that he will be persecuted by the Shining Path if he returns to Peru. Espinoza claims that his description of the Shining Path's threats was sufficient to establish that he had a well-founded fear of persecution when he left Peru in 1989. He further alleges that condi-

_____

**4** 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998).

**5** A.R. at 4 (citations omitted).
**6** 12 F.3d 1233 (3d Cir. 1993).
**7** **Fatin v. INS**, 12 F.3d 1233, 1240 (3d Cir. 1993).

**8** **Ghaly v. INS**, 58 F.3d 1425, 1431 (9th Cir. 1995) (citations omitted).

4

tions in Peru have not changed to such an extent as to make that fear no longer reasonable.

We have held that in order to prove a well-founded fear of persecution, an individual seeking asylum must show: "(1) that a reasonable person in the circumstances would fear persecution; and (2) that the fear has `some basis in the reality of the circumstances' and is validated with `specific, concrete facts.'"[9] In the instant case, the BIA determined that, given the nine-year time lapse since Espinoza left Peru, combined with the current diminished strength of the Shining Path, Espinoza lacked an objective, well-founded fear that the Shining Path had the ability to identify or target him for persecution. We agree.

As both the BIA and the Seventh Circuit have noted, changed political and social conditions can constitute "the most relevant factor" in evaluating the reasonableness of a petitioner's fear of persecution.[10] Here, the BIA considered a report supplied by the State Department which indicated that the Peruvian government "has seriously damaged" the Shining Path, that the government had apprehended, convicted, and imprisoned principal Shining Path leaders, and that there has been a dismantling of the Shining Path's command and control structure. Based on this evidence, we believe that the BIA properly determined that Espinoza lacked "an objectively reasonable fear that the Shining Path can identify him as the past target of its threats" or that it would actually target him despite its current limited ability to do so.[11]

Based upon the foregoing, we deny the Espinozas' petition for review and affirm the BIA's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED
_____

[9] **Huaman-Cornelio**, 979 F.2d at 999 (quoting M.A. v. INS, 899 F.2d 304, 311 (4th Cir. 1990)).

[10] **See Mitev v. INS**, 67 F.3d 1325, 1332 (7th Cir. 1995) (noting that changed political and social conditions are the most relevant factor).

[11] A.R. at 6.

5