[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**November 8, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 05-11358
Non-Argument Calendar
_____

Agency No. A78-854-120

NENGKAO ZHANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 8, 2005)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Nengkao Zhang, a native and citizen of China, petitions for review of the

Board of Immigration Appeals' final order affirming, without opinion, the

immigration judge's denial of asylum, withholding of removal under the

Immigration and Nationality Act ("INA"), and relief under the United Nations

Convention Against Torture ("CAT").[1]  We deny his petition.

## I.

In December 2001, Zhang, then nineteen years old, illegally entered this

country in Chicago, Illinois, using a counterfeit passport.  He filed an asylum

application in November 2002 and was subsequently issued a notice to appear

charging him with removability.  Zhang conceded removability but sought asylum

based on his fear of persecution if he returned to China because of his practice of

Falun Gong, a spiritual and philosophical movement banned by the Chinese

government since July 1999.  A hearing before the IJ was held in September 2003.

In his asylum application and testimony before the IJ, Zhang stated that he

began practicing Falun Gong in March 1999 while attending accounting school.

After the government's ban, the school prohibited its teachers and students from

practicing Falun Gong and from attending Falun Gong demonstrations and

assemblies.  In September 1999, the school suspended Zhang for practicing Falun

Gong and threatened him with dismissal if he continued to practice, which he

secretly did.

---

[1] Because proceedings commenced after April 1997, the permanent provisions of the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition.

After graduating from accounting school in June 2000, Zhang apparently joined a computer company and began leading Falun Gong sessions with four co-workers at one co-worker's house. At one session, according to Zhang, police surrounded the house and arrested Zhang's co-workers, one of whom called Zhang at his home and told him not to come there. Zhang testified that the police may have been looking for him because he was on a list of Falun Gong practitioners and was leader of the group. Zhang stated that he believed his co-workers were coerced into signing letters promising not to practice Falun Gong in the future. In August 2001, the computer company fired Zhang for attending Falun Gong practices and assemblies. Subsequently, the local authorities issued a subpoena to Zhang requiring him to appear before them on October 11, 2001. Instead, Zhang went into hiding for two months and then fled China altogether.

Although finding Zhang credible on most points, the IJ determined that Zhang failed to establish either past persecution or a well-founded fear of future persecution. The IJ found that Zhang had not demonstrated past persecution because Zhang was never arrested or detained because of Falun Gong and nothing in the subpoena itself indicated that it was issued because of his Falun Gong activities. The IJ determined that the only evidence supporting a fear of future persecution is Zhang's fear that "he will be arrested if he returns to China because of his Falun Gong practice and the fact that his group was raided about 2 1/2 years

3

ago." The IJ found this evidence unpersuasive in light of the background evidence that showed that the Chinese government was primarily seeking the leaders of the entire Falun Gong movement and that the arrests were done at large demonstrations, which Zhang stated he never attended. The IJ noted that Zhang, "by his own testimony indicates that he was a very, very, very[] small fish in the Falun Gong movement." In conclusion, the IJ stated that "[i]t hardly seems reasonable and believable that the Government of China has any interest in a small time leader in a group of four other people after 2 1/2 years." Accordingly, the IJ denied Zhang's application for asylum and other relief.

**II.**

"When the BIA summarily affirms the IJ's decision without an opinion, the IJ's decision becomes the final removal order subject to review." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1230 (11th Cir. 2005). "The IJ's findings of fact are reviewed under the substantial evidence test, and we 'must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001)). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." Id. (citations omitted).

To be eligible for asylum, an applicant must first demonstrate that he is a

4

refugee. 8 U.S.C. § 1158(b)(1).[2] The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

Id. § 1101(a)(42)(A). To establish that he is a refugee, an applicant for asylum must present specific and credible evidence that he has experienced past persecution or that he has a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1)–(2); Al Najjar, 257 F.3d at 1287.

Zhang does not contend that the IJ erred in finding that he failed to demonstrate past persecution. Therefore, Zhang has waived any claim for asylum based on past persecution. See Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995); Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994) ("Issues that clearly are not designated in the initial brief ordinarily are considered abandoned.").

Zhang does contend that the IJ erred by failing to consider certain background materials that corroborate his fear of future persecution if he is forced

---

[2] Amendments to this section by § 101(a)(3) of The REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231, 303, do not apply to this petition because the final order in this case was entered in September 2003, before § 101(a)(3) took effect in May 2005. See The REAL ID Act § 101(h)(2), 119 Stat. at 305.

to return to China. Specifically, Zhang points to the United Kingdom Immigration and Nationality Directorate 2002 China Country Assessment and a 2002 United States State Department Country Report on Human Rights and Country Conditions on China.[3] The 2002 U.K. China Country Assessment states that the Chinese government has branded Falun Gong as an illegal cult and terrorist organization and that it frequently detains Falun Gong practitioners without trial, imprisons them, and subjects them to torture. Therefore, Zhang argues, "a reasonable person like Zhang who practices Falun Gong would fear returning to China."

Zhang also contends that the IJ failed to consider certain evidence in the record supporting his fear, including the notice from his school prohibiting its teachers and students from practicing Falun Gong, the school suspension notice issued to Zhang, the subpoena issued by the police for Zhang, and the two letters from Zhang's mother recounting police inquiries of them as to Zhang's whereabouts and their claim to have gone into hiding to avoid the police. Zhang argues that the IJ erred in its assessment of the subpoena because "it is logical to presume, based on the circumstances as well as the subsequent attempts to arrest Zhang, that he was wanted because he was a Falun Gong practitioner" and that there was no evidence indicating that he was wanted "for any other reason."

---

[3] The 2002 State Department Country Report on China is not included in the record; therefore, we cannot properly consider it. See 8 U.S.C. § 1252(b)(4)(A).

Finally, Zhang asserts that the IJ's presumption that the Chinese government would no longer be interested in arresting Zhang because of the two-and-one-half-year time lapse since the subpoena was issued is without basis.

For two reasons, the evidence that Zhang points to does not compel us to reverse the IJ and find that Zhang has a well-founded fear that he will be persecuted in China. First, we agree with the IJ's analysis of the evidence, the thrust of which is that Zhang's fear of future persecution in China is not well-founded. To have a "well-founded fear," "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. While Zhang's credible testimony is sufficient to meet the subjective component, see id., the evidence does not support a finding that his fear is objectively reasonable. Simply put, there is no evidence that the government intends to incarcerate and/or punish Zhang. Zhang's concerns about what might happen when he returns to China are speculative because, as the IJ pointed out, the subpoena does not explain why the police are interested in Zhang and the police never tracked Zhang down after they raided the Falun Gong session at his co-worker's house. Although the letters from Zhang's mother in 2002 indicate that the Chinese authorities had been looking for Zhang, there was no more recent evidence that whatever interest the authorities had in Zhang would outlast his now four-year absence from China. See Sepulveda, 401 F.3d at 1232.

7

Second, there is no evidence that whatever awaits Zhang in China will rise to the level of persecution. "Although the INA does not expressly define 'persecution' for purposes of qualifying as a 'refugee,' . . . we have discussed other circuits' holdings that 'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Id. at 1231 (citing Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (citations omitted)). In Ghaly v. INS, 58 F.3d 1425 (9th Cir. 1995), a case cited by this Court in Gonzalez, the Ninth Circuit explained that persecution is "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." In this case, the only evidence that Zhang will be subjected to any "extreme" or "offensive" treatment is that the Chinese government is interested in talking to him and that they may have identified him as a Falun Gong practitioner. Given the evidence that Zhang's co-workers were eventually released and that the Chinese government is primarily interested in arresting Falun Gong adherents who, unlike Zhang, participate in public protests or demonstrations, it is mere conjecture that the Chinese government will treat Zhang in a way that rises to persecution.

Therefore, the IJ's finding that Zhang does not have a well-founded fear of persecution if returned to China is supported by substantial evidence. Accordingly, we affirm the IJ's holding that Zhang is not eligible for asylum.

8

## III.

Zhang's claims for withholding of removal and CAT relief are subject to a more stringent standard than the standard for granting asylum.  See <u>Al Najjar</u>, 257 F.3d at 1292–93, 1303–04.  Accordingly, because we affirm the BIA's conclusion that Zhang failed to establish a well-founded fear of persecution in order to be entitled to asylum, we also affirm the denial of withholding of removal and CAT relief.

**PETITION DENIED.**