**Nadezhda KOULIAN; Roza Koulian, Petitioners,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–72324.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 17, 2005.

Decided Nov. 17, 2005.

Howard R. Davis, Esq., Van Nuys, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Thankful T. Vanderstar, Esq., U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: HUG, PREGERSON, and CLIFTON, Circuit Judges.

MEMORANDUM *

Nadezhda Koulian and her daughter Roza, citizens of Russia, petition for review of the Board of Immigration Appeals' dismissal of their appeal from an Immigration Judge's denial of their application for asylum. The BIA found that Koulian did not establish past persecution or a well-founded fear of future persecution on account of either her Jehovah's Witness religion or Armenian ethnicity. We deny the petition.

Findings of the BIA are reviewed for substantial evidence, a deferential standard under which they must be upheld unless the evidence compels a contrary result. *See Ghaly v. INS,* 58 F.3d 1425, 1429 (9th Cir.1995). Persecution is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Id.* at 1431. Whether treatment rises to the level of persecution is a heavily fact-dependent question, which comparison to similar cases helps to answer. *See Krotova v. Gonzales,* 416 F.3d 1080, 1084 (9th Cir.2005).

In combination, the incidents cited by petitioners pale in comparison to those in cases where asylum applications have been

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

granted, and are factually similar to those in cases where asylum has been denied. *Compare Korablina v. INS*, 158 F.3d 1038, 1044–45 (9th Cir.1998) (persecution found) *with Nagoulko v. INS* 333 F.3d 1012, 1016 (9th Cir.2003) (no persecution found), *and Halaim v. INS*, 358 F.3d 1128, 1132 (9th Cir.2004) (no persecution found). We note, among other facts, that after being fired from her teaching job, Koulian was able to make a living as a vegetable gardener, and further that the removal of her daughter from school was Koulian's voluntary act.

**PETITION DENIED.**

PREGERSON, Circuit Judge, dissenting.

I believe that the evidence in the record compels the conclusion that Koulian has established a well-founded fear of persecution on account of her Jehovah's Witness religion and her Armenian ethnicity. *See Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001) (noting that, to demonstrate eligibility for asylum, "even a ten percent chance of persecution may establish a well-founded fear"). The Russian government persecuted Koulian on numerous occasions. Once, armed militia men and a lash-bearing Cossack [1] broke up a religious meeting she was conducting at her house. These men threatened that if Koulian continued to hold religious meetings in her house, she would be imprisoned. In addition, Koulian was fired from her job as a public school teacher for engaging in religious practices. Koulian credibly testified that she and her daughter were discriminated against by public school officials as Jehovah's Witnesses and as Armenians.

The Country Report Koulian submitted indicates that Armenians are singled out

for "arbitrary searches and detention on the pretext of fighting crime and enforcing residential registration requirements." It goes on to state that Russian governmental authorities target Armenians for harassment, arrest, deportation from urban centers, frequent document checks, extortion, beatings, and detentions or fines without proper documentation. Furthermore, this court held in *Avetova–Elisseva v. INS*, 213 F.3d 1192 (9th Cir.2000), that "the demonstrated harassment of Armenians in Russia amounts to 'persecution' under Section 1101(a)(42)(A)." *Id.* at 1202.

As in *Avetova–Elisseva*, Koulian's " 'outsider' status as an Armenian can only be worsened by her membership in a second minority group (this one religious)...." *Id.* at 1197 n. 7. Considering "evidence of substantial group persecution, ... coupled with [Koulian's] special circumstances," it would constitute a "serious gamble" to send Koulian back to Russia. *Id.* at 1201. The record compels a finding of a well-founded fear of future persecution. Therefore, I dissent.

---

1. According to the U.S. Department of State, Russia Country Report on Human Rights Practices for 1998 ("Country Report"), "the Cossacks' tactics appear designed to brutalize and intimidate the area's ethnic minorities and to bring about the group's stated goal of cleansing the area of all nonslavic Russians."