NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 19 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARINA ROCHA RODRIGUEZ; DULCE MARIA ROSAS ROCHA, Petitioners, v. PAMELA BONDI, Attorney General, Respondent. | No. 25-317 Agency Nos. A209-385-904 A209-385-905 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 6, 2026
Seattle, Washington

Before: PAEZ, BEA, and BRESS, Circuit Judges.

Marina Rocha Rodriguez and her daughter, Dulce Maria Rosas Rocha ("Rocha Rodriguez" or "Petitioners"), petition for review of the decision of the Board of Immigration Appeals ("BIA"), denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We review the BIA's order, as well as the portions of the IJ decision that the BIA incorporated as its own. *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022). We review denials of relief from removal for substantial evidence. *Id.* Exercising jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), we deny the petition.

**1.** Benito Rosas Gonzalez ("Benito"), Rocha Rodriguez's partner and Dulce's father, was killed while working at a location seven hours away from his home by car. Petitioners are not certain who killed Benito or why. About nine days after Benito was killed, Rocha Rodriguez received an anonymous phone call telling her to "be careful." Neither she nor her family has received any similar contact or threats before or after that phone call. Rocha Rodriguez and Dulce left for the United States about one month later. Petitioners testified that since their departure, four people close to them have been killed, but they do not know who killed them or why.

**2.** Rocha Rodriguez argues that Benito's murder and the phone call she received shortly after the murder compel the conclusion that she experienced past persecution. We disagree.

We have "repeatedly held that threats may be compelling evidence of past persecution, particularly when they are specific and menacing and are accompanied by evidence of violent confrontations, near-confrontations and vandalism." *Flores Molina*, 37 F.4th at 634 (quoting *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004)). The phone call Rocha Rodriguez received, however, was not clearly a threat,

let alone a specific threat. The anonymous caller did not specify the basis for the threat, any particular threatened harm, when the harm would come about, or where it would occur. And the single act of killing Benito—with no details about the circumstances of the killing, no other acts of violence or confrontations before Petitioners left for the United States, and no other threats—does not compel the conclusion that the single vague, anonymous phone call amounted to past persecution.

**3.** Substantial evidence also supports the BIA's conclusion that Rocha Rodriguez "did not demonstrate an objectively reasonable possibility of persecution upon [her] return to Mexico." Rocha Rodriguez was required to present "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Kumar v. Gonzales*, 444 F.3d 1043, 1054 (9th Cir. 2006) (quoting *Ghaly v. INS*, 58 F.3d 1425, 1428 (9th Cir. 1995)). Given the lack of any specific threat in the phone call that Rocha Rodriguez received and the lack of details about Benito's death or the killings that have occurred since she left Mexico, the record does not compel a contrary conclusion.

Because the agency did not err in its well-founded fear determination, we need not address the alternative conclusion that Rocha Rodriguez could safely relocate. *See* 8 C.F.R. § 1208.13(b) (describing the possibility of safe relocation as relevant only if an applicant establishes past persecution or a well-founded fear).

**4.** Because the agency did not err in its past and future persecution determinations, it did not err in denying Petitioners' applications for withholding of removal. *Sharma v. Garland*, 9 F.4th 1052, 1066 (9th Cir. 2021).

**5.** Nor did the agency err in denying Petitioners' applications for CAT relief. Because torture is more extreme than persecution and Rocha Rodriguez was not persecuted, the agency did not err in concluding that Rocha Rodriguez was not tortured in the past. *Hernandez v. Garland*, 52 F.4th 757, 769 (9th Cir. 2022). And substantial evidence supports the agency's conclusion that Petitioners are not likely to be tortured in the future. Rocha Rodriguez testified that Benito and the others might not have been killed by gangs, and she could not identify which gang might have killed them. Thus, even if the country reports show that gang violence goes unchecked by Mexican officials, Rocha Rodriguez's testimony fails to link that evidence to her risk of harm. Accordingly, the evidence does not compel the conclusion that state actors would likely acquiesce in the future torture of Rocha Rodriguez. *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam).

**6.** The agency did not violate Rocha Rodriguez's due process rights by declining to decide the nexus prong of her asylum claim. To prevail on her due process challenge, Rocha Rodriguez must show both error and prejudice—i.e., that the outcome may have been affected by the alleged violation. *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020). She cannot do so here. Even if the agency had

made a favorable nexus finding, it still would have denied Rocha Rodriguez's asylum application on the independent basis that Rocha Rodriguez did not experience past harm rising to the level of persecution and did not have a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b) (listing essential elements of asylum eligibility). The agency thus neither erred nor prejudiced Rocha Rodriguez. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("Courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").[1]

**PETITION DENIED.**

---

[1] The motion to stay removal, Dkt. 3, is denied. The temporary stay of removal shall remain in place until the mandate issues.