134 F.3d 376
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roberto Pasamba CERVANTES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-71130.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 3, 1997.**
Decided Jan. 9, 1998.
 
 On Petition for Review of an Order of the Board of Immigration Appeals.
 Before: WOOD,*** RYMER, and TASHHMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner Roberto Pasamba Cervantes was charged as being deportable under Section 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 125 1(a)(1)(b) for remaining in this country after the expiration of his non-immigrant visa. On May 3, 1994, deportation proceedings were initiated against Cervantes through issuance of an Order to Show Cause filed by the Immigration and Naturalization Service ("INS"). Subsequently, Cervantes sought asylum (for a second time) and withholding of deportation. Following a hearing on the merits, the immigration judge ("IJ") denied Cervantes asylum and withholding of deportation but granted him a voluntary departure. Finding Cervantes failed to satisfy his burden of proving that he had suffered past persecution or had a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion should he be returned to the Philippines, the IJ ordered Cervantes to depart the United States within six weeks at his own expense.
 
 
 3
 Cervantes filed a timely appeal of the U's decision with the Board of Immigration Appeals ("BIA" or "Board"). On November 29, 1996, the BIA affirmed the U's decision. Consequently, Cervantes filed this petition for review of the BIA's order asserting that he had established eligibility for asylum and withholding of deportation and that the BIA's order was not supported by substantial evidence. We AFFIRM the decision of the BIA and deny Cervantes' petition for review.
 
 FACTS
 
 4
 Roberto Pasamba Cervantes ("Cervantes") is a native and citizen of the Philippines. From 1987 to 1992, Cervantes lived and worked in Saudi Arabia, returning home to the Philippines occasionally on leave. He was employed as a medical assistant. During this period a communist guerilla group, known as the New People's Army ("NPA"), attempted to impose a revolutionary land tax on local landowners in Cervantes' hometown. In 1990, at a local council meeting, Cervantes spoke out against the NPA's "imposition of a revolutionary tax to all land owners." After the meeting, Cervantes claims the NPA invited him to have a conversation. At this meeting the NPA informed Cervantes of its desire to obtain 200 pesos for every hectare. Cervantes told them that the land did not provide enough yield to pay that amount. According to Cervantes, NPA representatives than told him that crops would be confiscated to provide the payment. One month later, in another meeting with the guerillas concerning payment of the tax, Cervantes claims the NPA requested that he sign a paper stating that he had violated NPA laws and agreeing to provide medical assistance to injured NPA members. Cervantes did not commit to providing medical assistance because he feared government retaliation, but he did sign the paper with some scribbling which was sufficient to satisfy the NPA members present. It was around this time, October 1990, that Cervantes alleges that a friend informed him that he had been placed on an NPA "hit" list.
 
 
 5
 Admitted under a nonimmigrant visa, Cervantes entered the United States on April 26, 1992 and was authorized to remain in the United States for a temporary period not to exceed October 26, 1992. Claiming he had been subjected to threats by the NPA because of his anti-communist positions and refusal to provide monetary support, Cervantes filed a request for asylum in the United States with the INS on May 13, 1992.
 
 
 6
 On January 31, 1994 the INS notified Cervantes' of its intent to deny his May 13, 1992 asylum request. After interviewing him, the agency concluded that, although Cervantes was credible, the events he described did not rise to the level of past persecution nor had he established a well-founded fear of future persecution. In particular, the agency found that Cervantes failed to establish: (1) the NPA has any inclination to harm him, (2) that the authorities would be unable or unwilling to provide reasonable protection, and (3) that the Philippine government was unable to control the NPA. On May 3, 1994, a year and a half after Cervantes' visa had expired, the Los Angeles division of the INS instituted deportation proceedings against Cervantes filing an Order to Show Cause and Notice of Hearing. Subsequently, Cervantes filed another application for asylum on October 10, 1994.
 
 
 7
 Following a motion for change of venue, Cervantes' deportation case was transferred to the INS' San Francisco Immigration Court on October 27, 1994. After a December 14, 1995 deportation hearing, the IJ issued an oral decision finding the following: (1) Cervantes' deportability was established by clear, convincing, and unequivocal evidence, (2) the evidence presented did not demonstrate past persecution, and (3) the respondent failed to establish a well-founded fear of future persecution. On the basis of these findings, the IJ denied Cervantes' asylum petition and application for withholding of deportation under, but granted his request for a voluntary departure if made before February 1, 1996.
 
 
 8
 On November 29, 1996, the BIA affirmed the U's decision and dismissed Cervantes' appeal. In support the BIA stated: "[w]e agree with the Immigration Judge that the respondent has not established past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," and that "whatever difficulty the respondent encountered with the NPA regarding the landowners' group was due to the NPA's interest in procuring funds from the landowners to support the NPA's cause, rather than on account of respondent's political opinion." Cervantes filed a timely petition for review with this court, claiming the BIA's decision was not supported by substantial evidence.
 
 DISCUSSION
 
 9
 Petitioner Cervantes seeks asylum under Section 208(a) of the INA and withholding of deportation under Section 243(h) of the INA, 8 U.S.C. § 1158(a) and 1253(h) respectively. Since the burden on an alien seeking asylum is lighter than that for withholding of deportation, the requirements for asylum are addressed first.
 
 
 10
 Decisions regarding asylum require a two-step process: (1) the person resisting deportation must establish he or she is a "refugee", and (2) the Attorney General must decide whether the refugee is entitled to asylum as a matter of discretion. See 8 U.S.C. § 1158(b)(1); Fisher v. INS, 79 F.3d 955, 960 (9th Cir.1996); and Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995).
 
 
 11
 The first step involves fact finding by the board to determine if the petitioner qualifies as a "refugee." A refugee is a person unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13. "Persecution is an extreme concept." Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996). Since the Act does not define "persecution" we must defer to the Board's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." Id, citing Romero v. INS, 39 F.3d 977, 980 (9th Cir.1994); see also Barrera-Echavarria v. Rison, 44 F.3d 1441, 1444 (9th Cir.) (en banc) (court may not substitute its own construction of the Act for the Board's reasonable interpretation). Ordinarily, mere discrimination or harassment does not constitute "persecution." See Ghaly, 58 F.3d at 1431. To show past persecution an alien must show that the government, or a group which the government is unable or unwilling to control, has inflicted upon the alien "suffering or harm upon those who differ in race, religion, or political opinion, in a way regarded as offensive." Surita v. INS, 95 F.3d 814, 819 (9th Cir.1996) (citations omitted).
 
 
 12
 To establish a well-founded fear of persecution an alien must establish that the fear of persecution is both subjectively reasonable and objectively reasonable. The subjective requirement merely requires a showing that the alien's fear is genuine. De Valle v. INS, 901 F.2d 787, 790 (9th Cir.1990). "The objective component requires a showing by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995), quoting Arriaga-Barrientos v. INS, 925 F.2d 1177, 1178-79 (9th Cir.1991). Unless the alien qualifies as a refugee then the second step, the Attorney General's discretion to grant asylum, becomes irrelevant. See 8 U.S.C. 1158(b)(1); 8 C.F.R. § 208.14(a).
 
 
 13
 Withholding of deportation to a particular country is mandatory (no discretion is allowed) if the Attorney General determines that the alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion except in certain circumstances not applicable here. 8 U.S.C. § 1253(h)(emphasis provided). An alien seeking relief from deportation on this basis must establish a clear probability that he would be subject to persecution in the country to which he is to be deported. INS v. Stevic, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).
 
 A. Petitioner's Burden of Proof
 
 14
 The alien bears the burden of proof to establish eligibility for asylum and withholding of deportation. 8 C.F.R. § 208.13; Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986). For asylum, the applicant must present specific facts demonstrating that he or she is a refugee, either by showing past persecution or by showing a well-founded fear of future persecution. Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995). The alien's burden of proof to establish eligibility for withholding of deportation is more stringent than the well-founded fear standard for asylum, requiring the alien to show a "clear probability" that it is more likely than not that he will face persecution if he is deported to a particular country. Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996); INS v. Cardoza-Fonseca, 480 U.S. 421,425 (1987); Sarvia-Quintanilla v. INS, 767 F.2d 1387, 1392 (9th Cir.1985). Since the standard for withholding is more stringent, ineligibility for asylum precludes eligibility for withholding. Fisher, 79 F.3d at 961, citing Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995).
 
 B. Standard of Review
 
 15
 We review the BIA's determinations of past persecution and a well-founded fear of persecution, including its factual findings, for substantial evidence. Fisher, 79 F.3d at 961, citing INS v. Elias-Zacarias, 502 U.S. 478 (1992). Substantial evidence review of the BIA's findings of fact is extremely deferential. Cervantes has the heavy burden of establishing that the evidence not only supports the conclusion that he suffered persecution or has a well-founded fear of persecution, but compels it. Id. citing, Ghaly, 58 F.3d at 1431.
 
 C. Past Persecution
 
 16
 In a hearing before the U, Cervantes claimed that NPA actions against him, between 1990 and 1992, established past persecution. In his request, Cervantes claimed that he had been subjected to "all kinds of threats and harassment" because of his known political beliefs in opposition of communism. According to Cervantes encounters with the NPA constituted past persecution and provided a well-founded fear of persecution should he be returned to the Philippines. However, in testimony before the U, Cervantes testified to only a single encounter with members of the NPA where they spoke to him only regarding his opposition to their tax collection efforts and his possible service to them as a medical assistant. In fact, there is no evidence from Cervantes' testimony before the IJ that the NPA ever knew or expressed concern regarding his political beliefs. Furthermore, although Cervantes claimed that a friend told him he was on an NPA list to be terminated, nowhere in his testimony does he assert that the NPA took any action against him or his family. To the contrary, Cervantes' asylum application provides that neither he nor his family had ever been mistreated or threatened by the Philippine government or a group which the Philippine government was unable to control. Furthermore, during this period, 1987-1992, of alleged NPA persecution Cervantes worked in Saudi Arabia as a medical assistant returning home only occasionally on leave.
 
 
 17
 The IJ found that the evidence failed to demonstrate past persecution. Because Cervantes had spent considerable time in Saudi Arabia from 1987-1992 the IJ was not convinced that Cervantes' description of events was accurate. Finding Cervantes less than credible, the IJ stated: "the Court makes no credibility finding as the Court is not persuaded that the events which respondent has described actually happened on the dates that they did." Furthermore, the IJ found that the one incident in the summer of 1990, when Cervantes met with the NPA guerillas who spoke to him in a diplomatic manner and merely asked him to sign a paper, failed to demonstrate past persecution since they took no action against him and made no demand for money. This finding is amply supported by Cervantes' testimony in the record. Nowhere in Cervantes' testimony does he claim that either he or his family, who continue to reside in the Philippines apparently without incident, have actually been threatened by the NPA. Furthermore, between 1987 and 1992, when the alleged persecution took place, Cervantes was living and working in Saudi Arabia returning to the Philippines only for short periods of leave from work.
 
 
 18
 The BIA affirmed the U's finding that Cervantes had not suffered past persecution. The BIA's order states:
 
 
 19
 The record indicates that whatever difficulty the respondent encountered with the NPA regarding the landowners' group was due to the NPA's interest in procuring funds from the landowners to support the NPA's cause, rather than on account of respondent's political opinion. Although the respondent claims that his name is on an NPA hit list, he was not approached by NPA members regarding such a threat. Further, the respondent's parents currently live in the Philippines, apparently without incident.
 
 
 20
 Cervantes had the burden of setting forth specific facts demonstrating past persecution. Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995). The IJ and the BIA found that Cervantes failed to establish past persecution. We agree. The BIA's finding of fact, that Cervantes did not suffer past persecution, is supported by substantial evidence.
 
 D. Well-founded Fear of Future Persecution
 
 21
 The BIA agreed with the U's finding that Cervantes failed to establish a well-founded fear of future persecution. The BIA's decision was based on three findings. First, Cervantes' parents continued to reside in the Philippines, apparently without incident. Despite Cervantes' belief that his name was on a list to be terminated, the NPA never followed up with any direct action. Finally, a June 1995 Country Report produced by the United States Department of State reporting on human rights practices in the Philippines and titled: The Philippines: Profile of Asylum Claims and Country Conditions, stated:
 
 
 22
 In late 1994 it was estimated that the NPA consisted of fewer than 8,000 members, a 70% reduction from its peak strength in 1988, and that it was a significant presence in only 2 percent of the 42,000 townships ... It is generally possible for Filipinos to seek internal resettlement to avoid a credible threat by the NPA. Its diminishing size and resources limit its ability to carry out threats.
 
 
 23
 The BIA's finding that Cervantes failed to meet the objective component of a well-founded fear of persecution was also supported by substantial evidence.
 
 E. Withholding of Deportation
 
 24
 This Circuit has consistently held that the inability to satisfy the lower burden of proof required for asylum, a well-founded fear of persecution, necessarily precludes finding the greater burden of clear probability of persecution required for withholding of deportation. Fisher, 79 F.3d at 961; Ghaly, 5 8 F.3d at 1429; Arriaga-Barrientos, 925 F.2d at 1180. Thus, Cervantes' failure to meet the lower burden of proof for asylum precluded finding he satisfied the higher standard for withholding of deportation.
 
 CONCLUSION
 
 25
 For the reasons stated above we AFFIRM the decision of the BIA and the petition for review is denied.
 
 
 26
 DECISION AFFIRMED AND PETITION FOR REVIEW DENIED.
 
 
 
 **
 It has been determined that this case is suitable for decision without argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 344
 
 
 **
 * The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3