142 F.3d 444
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Johanna Lissette MAGANA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 97-70146. Adn-jbm-vxe.
 United States Court of Appeals,
Ninth Circuit.
 .
Submitted March 10, 1998.**
Decided April 20, 1998.
 
 On Petition for Review of an Order of the Board of Immigration Appeals.
 Before WOOD, JR.*** , HALL and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner, Johanna Lissette Magana, illegally entered the United States in 1991. After residing here for more than three and a half years, she applied for asylum with the Immigration and Naturalization Service ("INS"). Petitioner's application was denied and she was charged as being deportable under Section 241(a)(1)(B) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1251(a)(1)(B). Although conceding her deportability, Petitioner renewed her request for asylum and withholding of deportation. After a hearing on the merits before an Immigration Judge ("IJ"), her request was denied. Affirming the IJ, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal and granted her a voluntary departure within 30 days of its order. This petition for review followed. Because we find the BIA's findings supported by substantial evidence we must deny the petition.
 
 FACTS
 
 3
 Petitioner is a single 25-year-old native and citizen of El Salvador. She grew up and lived in the city of Son Sonate. Petitioner's five-year-old son, mother and three siblings continue to reside in El Salvador. In 1984, when she was 12 and attending high school in San Salvador, she joined the AES, a Salvadoran student association. Although the organization's exact purpose is unclear, the AES was apparently involved in efforts to make educational opportunities available for students in all socioeconomic classes. Petitioner testified that she was a member of AES for about six years and that about 40% of the students in her high school were members.
 
 
 4
 As a member of the AES, Petitioner carried an identification card identifying her as a member. Petitioner's sole activity with the AES involved recruiting new members. She would approach fellow students she believed likely to be receptive to the AES and show prospects her AES card. Most of her recruiting was done in a park near the high school. On December 15, 1990, while she was recruiting in the park, Petitioner was approached by four plain clothed military officers. They identified themselves as members of the Salvadoran armed forces and asked her what she was doing. When she told them she was talking to students about the AES, the officers asked her about the nature and purpose of the organization. After searching her and finding her AES identification card, the officers blindfolded her and took her away in a car.
 
 
 5
 Petitioner was taken some distance into the mountains where she was kept restrained and often blindfolded in a prison camp. She was kept in the camp for nearly two months. During this time she was frequently interrogated about the nature of the AES and was accused of helping guerillas against the government. She was threatened, occasionally beaten and had cold water thrown on her. After two months, she was released. Petitioner stated her belief that her release was due to the soldiers' inability to prove she was working for any guerilla organizations.
 
 
 6
 After her release, Petitioner remained in her home for about two months. Frightened after her experience, she decided to move to the United States. Petitioner entered the United States on May 10, 1991. She entered through Arizona without inspection although she knew this was illegal. After working illegally in the United States for more than three and a half years, Petitioner filed an affirmative asylum petition on November 18, 1994. In her petition, Petitioner claims she was persecuted and fears future persecution due to her imputed political opinion by the government of El Salvador.
 
 
 7
 A July, 1995 State Department report containing a Profile of Asylum Claims and Country Conditions in El Salvador indicates that conditions in El Salvador have dramatically changed since Petitioner left the country. (See Admin. R. at 98-104). According to this report, United Nations' brokered peace accords in 1992 resulted in the demobilization of El Salvador's guerilla combat units and sweeping changes throughout the country since then. These changes include: rapid economic growth, declines in security forces' abuse and torture, amnesty for politically motivated crimes and freedom of movement throughout the country. However, unemployed combatants and ready access to weapons has "provided fertile ground for violent crime." (Id.).
 
 
 8
 On March 13, 1996, the IJ rejected Petitioner's request for asylum and withholding of deportation for two reasons. First, the IJ found insufficient evidence in the record to support Petitioner's claim of past persecution. The IJ reasoned that even if Petitioner's account of her abduction, interrogation and treatment were true, the described events did not rise to the level of persecution. Finally, the IJ, noting the vast improvement in the country's conditions since the implementation of the peace accords, found Petitioner's fear of future persecution unwarranted. The IJ did, however, grant Petitioner's request for a voluntary departure. Petitioner appealed the IJ's decision to the BIA.
 
 
 9
 Affirming the decision of the IJ, the BIA dismissed Petitioner's appeal on January 15, 1997. The BIA held that Petitioner failed to meet her burden of establishing past persecution or a well-founded fear of future persecution on account of political opinions imputed to her and granted her a voluntary departure within 30 days.
 
 ANALYSIS
 
 10
 Decisions regarding asylum require a two-step process: (1) the person resisting deportation must establish he or she is a "refugee", and (2) the Attorney General must decide whether the refugee is entitled to asylum as a matter of discretion. 8 U.S.C. § 1158(b)(1); see also Fisher v. INS, 79 F.3d 955, 960 (9th Cir.1996); Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995).
 
 
 11
 In order to be entitled to asylum an alien must qualify as a refugee under 8 U.S.C. § 1101(a)(42). An alien may establish refugee status by establishing past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Id. Under § 208(a) of the Act, 8 U.S.C. § 1158(a), aliens must bring forth specific and objective facts supporting an inference of past persecution. See INS v. Cardoza-Fonseca, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). "Persecution is an extreme concept." Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (en banc). Since the Act does not define "persecution" we must defer to the Board's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute ." Id. (quoting Romero v. INS, 39 F.3d 977, 980 (9th Cir.1994) (internal quotation marks omitted)); see also Barrera-Echavarria v. Rison, 44 F.3d 1441, 1444 (9th Cir.1995) (en banc) (court may not substitute its own construction of the Act for the Board's reasonable interpretation). Ordinarily, mere discrimination or harassment does not constitute "persecution." See Ghaly, 58 F.3d at 1431.
 
 
 12
 To show past persecution an alien must show that the government, or a group which the government is unable or unwilling to control, has inflicted upon the alien "suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." Surita v. INS, 95 F.3d 814, 819 (9th Cir.1996).
 
 
 13
 To establish a well-founded fear of persecution an alien must satisfy both subjective and objective standards. Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995). The subjective requirement merely requires a showing that the alien's fear is genuine. Id. "The objective component requires a showing of credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution." Id. Unless the alien qualifies as a refugee, the second step, the Attorney General's discretion to grant asylum, becomes irrelevant. See 8 U.S.C. 1158(b)(1); 8 C.F .R. § 208.14(a). The alien bears the burden of proving he qualifies for asylum or withholding of deportation. 8 C.F.R. § 208.13(a); Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986). We review decisions regarding asylum or withholding of eligibility deferentially and will uphold the factual determinations regarding past persecution and a well-founded fear of future persecution if they are supported by substantial evidence. Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (en banc).
 
 
 14
 Petitioner asserts that the BIA erred in finding that she had not been persecuted on account of her imputed political opinion. She further asserts that she established a clear probability of persecution should she return to El Salvador. The BIA thought otherwise and we agree.
 
 
 15
 The BIA denied asylum and withholding of deportation because it found Petitioner failed to demonstrate past persecution or a well-founded fear of persecution on account of one of the statutory factors. The decision involved two determinations. First, the BIA found that the events surrounding Petitioner's earlier abduction and interrogation did not rise to the level of past persecution. Second, the BIA found that, in light of dramatic political changes in El Salvador since Petitioner had left, she could not demonstrate a well-founded fear of persecution.
 
 
 16
 Petitioner was a member of the AES, an organization of high school students seeking socioeconomic equality in educational opportunities. According to Petitioner, the organization did not participate in political activities or advocacy. In fact, the only AES activity Petitioner was involved in was recruiting new members. There was no evidence that the views or objectives of the AES were widely known or that the soldiers who approached her in the park had ever heard of the AES before they accosted her. While she was held captive, the soldiers' offensive activities appeared solely aimed at discovering whether Petitioner was involved with any of El Salvador's guerilla movements. Although her treatment was certainly deplorable, the BIA reasonably found that it did not rise to the level of "persecution" contemplated by the Act. Petitioner simply cannot point to any evidence demonstrating a specific effort targeted at her because of her political beliefs or any other protected basis. Rather, the evidence shows her treatment was part of a wide-ranging effort to root out individuals connected with the guerillas.
 
 
 17
 The State Department's Country Conditions report indicates substantial political changes in El Salvador since the peace accord of 1992. The report states that "under the peace accords, both sides have agreed to work within the electoral process, institutionally sponsored mistreatment with purely political motivation would seem unlikely...." Petitioner points to no documentary evidence to support her claim of a well-founded fear of persecution. She points to no evidence that the AES still exists or that, even if it does, the current government cares about its objectives or members. The only support she provides is her subjective fear that the army would kill her if she returned. Thus, the BIA's determination that Petitioner failed to establish a well-founded fear of persecution was supported by substantial evidence.
 
 CONCLUSION
 
 18
 In light of the fact that Petitioner has not demonstrated she suffered past persecution or has a well-founded fear of future persecution, her request for withholding of deportation must also be denied. The standard for withholding deportation is even more stringent than the standard for asylum. See Fisher, 79 F.3d at 961.
 
 
 19
 PETITION FOR REVIEW DENIED AND DECISION AFFIRMED.
 
 
 
 **
 It has been determined that this case is suitable for decision without argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 * The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3