[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-12012
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 8, 2005
THOMAS K. KAHN
CLERK

BIA Agency Nos. A95-900-118, A95-900-119


ISOLDA MARIA ZAPATA-RAMIREZ,
AICARDO JARAMILLO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 8, 2005)


Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Petitioners, Isolda Maria Zapata-Ramirez ("Zapata[1]") and Aicardo Jaramillo ("Jaramillo"), through counsel, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") removal order and denying their claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 et seq.[2]  We DISMISS in part and DENY in part their petition for review.

## I. BACKGROUND

On 16 October 2002, the Immigration and Naturalization Service ("INS")[3] issued two separate Notice to Appear forms ("NTA"), charging that the petitioners, a husband and wife who are natives and citizens of Columbia, were subject to removal under 8 U.S.C. § 1227(a)(1)(B), as nonimmigrants who had remained in the United States for a time longer than permitted.

Prior to this, on 20 August 2002, well over a year after she and her husband

---

[1]  Zapata is the lead petitioner and all following references to Zapata apply to both petitioners unless specifically stated otherwise.

[2]The IJ also denied Zapata's claim for relief under the United Nations Convention Against Torture ("CAT").  See 8 C.F.R. § 208.16(c)) (2005).  This claim is deemed abandoned because no such argument appeared in the briefs before us.  Mendoza v. U. S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

[3]  On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, which created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department.  See 6 U.S.C. §§ 201-298.  Although this case was initiated after the act was signed into law, many of the documents in the administrative record still refer to the INS.

had entered the United States, Zapata applied for asylum, withholding of removal, and relief under CAT based on persecution for political opinion for herself and Jaramillo. In the alternative, she sought voluntary departure. In her application, Zapata stated that she worked as an exporter for a shoe company in Columbia; she had been a member of the Conservative party at least since 1994; and she had worked on political election campaigns from 1994 until 2000.

Zapata also described how, in 1995, she was allegedly accidently shot by a police officer who then left the scene without helping her. Zapata initially attempted to denounce this officer for his conduct through the Colombian Attorney General's office, but her case was dismissed in 1996. That same year she received treatment from a therapist for related trauma she experienced. Five years later, in December 2000, she denounced the officer on the radio. In response, that officer, in the company of another officer, came to her home and threatened to kill her and her family if she did not stop the denunciation. He also told her to stop her political activities. The next day, he confronted her outside her lawyer's office, but fled when she began to scream. That night, he threatened her by phone,[4] and over the next few weeks there were calls for her and hang-ups. She

---

[4]The officer did not identify himself during the course of this phone call, but Zapata claims that she recognized his voice.

again pursued therapy and then fled to the United States in January 2001. In February 2001, the police officer threatened Zapata's lawyer in Colombia to stop the denunciation or he would kill him.[5]

The IJ granted Zapata's application for voluntary departure with an alternative order of removal to Colombia, and denied the applications for asylum, withholding of removal, and relief under CAT. In his oral decision, the IJ first noted that Zapata's application for asylum was untimely and found she had not presented evidence of changed conditions or extraordinary circumstances to excuse the late filing under 8 U.S.C. § 1158(a)(2)(D). The IJ then denied her application for withdrawal of removal because her claim did not fall within one of the five protected grounds under 8 U.S.C. § 1231(b)(3). Specifically, Zapata failed to meet her burden of proof with regard to her application based on political opinion because the police officer's actions were more probably motivated by his

---

[5]In support of her application, Zapata attached (1) her report to the Human Rights Board; (2) The Human Rights Attorney General's report; (3) medical records of her injury; (4) attestations to her membership in community groups by two different leaders; (5) a letter from her psychologist confirming her time in treatment; and (6) a letter from her lawyer corroborating her story. The application record also contained the U.S. State Department's Columbia Country Report on Human Rights Practices for 2002 which indicated that (1) there were between 4,025 and 4,416 politically motivated homicides in 2001, including 59 by state actors; (2) there were reports that security forces members harassed members of human rights groups; (3) activists continued to be victims of high levels of violence; and (4) female leaders of political and peasant organizations were the targets of abuse, threats, torture, and executions.

own interests than by governmental persecution. The IJ also found Zapata could easily have relocated within Colombia to avoided persecution by that officer. Finally, the IJ denied her application for CAT relief because there was no evidence that (1) the police officer had Zapata under his control; (2) the government would continue to torture her throughout the country; or (3) she could not avoid the police officer by moving to another location in Colombia.

Zapata filed a notice of appeal with the BIA, asserting that the IJ had abused his discretion and misinterpreted and misapplied the law. She also explained that she had not timely applied for asylum because she had been depressed and because she had become pregnant in late August 2001 and thought it best for the baby that she not apply for asylum while she was pregnant. The BIA adopted and affirmed the IJ's decision and dismissed the appeal. It agreed Zapata had not met her burden of proof as to persecution and that the asylum application was time-barred, and affirmed the grant of voluntary departure with an alternate order of removal.

Zapata now claims the BIA erred in adopting the IJ's order finding she had failed to show changed conditions or extraordinary circumstances that would excuse her lateness in filing for asylum. She also argues the BIA erred in adopting the IJ's finding that she had failed to demonstrate eligibility for withholding of removal. The Attorney General argues that we lack jurisdiction to consider

Zapata's claims regarding asylum and that there was substantial evidence to support the IJ's finding as to withholding of removal.

## II. DISCUSSION

When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, because the BIA expressly adopted the IJ's decision, we review both.

A. Jurisdiction to Review BIA's Conclusion as to Timeliness

The Attorney General argues that we lack jurisdiction to consider Zapata's argument regarding the denial of the asylum claims as untimely. We review our subject-matter jurisdiction de novo. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). Under 8 U.S.C. § 1158(a)(2)(B) (2005), an asylum applicant must show by clear and convincing evidence that the application for asylum was filed within one year of the alien's arrival in the United States. Although a late application for asylum can be considered if changed or extraordinary circumstances exist, the evaluation of those circumstances is committed to the sole discretion of the Attorney General. 8 U.S.C. §§ 1158(a)(2)(D)-(a)(3). The decision of the Attorney General "is not reviewable by any court." Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217 (11th Cir. 2002) (per curiam). Further, the

6

timeliness of an asylum application is not a constitutional question or a question of law, and therefore the recently enacted REAL ID Act, Pub. L. No. 109-13, Div. B, § 106(a)(1)(A)(iii), 119 Stat. 231 (2005), does not grant jurisdiction. See Chacon-Botero v. U.S. Attorney General, ___ F.3d ___, No. 04-16442, 2005 WL 2456877, at *2 (11th Cir. Oct. 6, 2005) (per curiam).[6]

Here, the BIA fully adopted the IJ's determination that Zapata's asylum application was untimely and that Zapata had failed to establish changed or extraordinary circumstances to excuse the untimeliness. This was a discretionary ruling based on findings of fact. Therefore, we lack jurisdiction to review it. Accordingly, we must dismiss the petition as to this issue.

B. Withholding of Removal

To the extent that the BIA's decision was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a

---

[6]The REAL ID Act of 2005 amended the judicial review provisions of 8 U.S.C. § 1252(a)(2) to grant jurisdiction to review constitutional claims and questions of law, notwithstanding other provisions in the statute. REAL ID Act, Pub. L. No. 109-13, Div. B, § 106(a)(1)(A)(iii), 119 Stat. 231 (2005). We have held that "we cannot review the IJ's and BIA's denial of [petitioner's] asylum claim, even considering the changes in the Real ID Act." Chacon-Botero, ___ F.3d ___, No. 04-16442, 2005 WL 2456877, at *3.

whole.'" Al Najjar, 257 F.3d at 1283-84 (citation omitted). To reverse the BIA's decision, we must conclude that the record not only supports such a reversal, but "compels" it. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, Adefemi v. Gonzalez, __ U.S. __, 125 S. Ct. 2245 (2005).

An alien shall not be removed to a country if her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The alien has the burden of proof "to establish that she would face persecution on account of one of five covered grounds upon [her] return to the proposed country of removal." Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1264 (11th Cir. 2004). To establish eligibility the applicant must show that she suffered past persecution or that she has a well-founded fear of future persecution. 8 C.F.R. § 208.16(b)(1)-(2). There must also be a causal connection between the feared persecution and the protected ground. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam).

Further, where the alien has not actually suffered past persecution, she bears the burden of establishing that she would "more likely than not" suffer persecution upon removal. Antipova, 392 F.3d at 1264. "An alien cannot demonstrate that [s]he more-likely-than-not would be persecuted on a protected ground if the IJ

8

finds that the alien could avoid a future threat by relocating to another part of [her] country." Mendoza, 327 F.3d at 1287. In other words, at least for non-governmental persecution, the applicant must also show that the threat of persecution is country-wide. Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1327 (11th Cir. 2001).

Finally, to show a well-founded fear of future persecution, the "applicant must demonstrate that [the] fear is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "[M]enacing telephone calls and threats to [the applicant] do not rise to the level of past persecution that would compel reversal of the IJ's decision." Sepulveda, 401 F.3d at 1231. Moreover, "[n]ot all exceptional treatment is persecution"; it is an "extreme concept" requiring "more than a few isolated incidents of verbal harassment or intimidation." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (quoting Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir. 1995), and Mikhailevitch v. INS, 146 F.3d 384, 390 (6th Cir. 1998)).

Zapata experienced two face-to-face confrontations with a police officer, one threatening telephone call, and several harassing telephone calls in which the caller asked for her or called and hung up. These incidents do not rise to the level of extreme treatment that constitutes past persecution. Further, Zapata has failed

to show that her fear of future persecution is objectively reasonable or related to her political opinion. She was not physically harmed in the five years between the incidents (the accidental shooting and the confrontation by the police officer) even though she was involved in community activism. The threats against her were by one, and there was never any indication that the police generally were involved, or even that the officer in question intended to carry through with his threats. Finally, after Zapata left the country, when that officer threatened her lawyer, he made no comments or threats related to Zapata's political opinion or activities. Thus, substantial evidence supports the agency's conclusion that Zapata did not meet her burden to establish a well-founded fear and a causal link between the alleged persecution and her political opinion.

Neither has Zapata shown that she could not escape persecution by relocating within Colombia. Again, except in one instance, only one police officer harassed her, and there was no indication of any general effort by the police to persecute her. Accordingly, the BIA's finding that Zapata was not entitled to withholding of removal is supported by substantial evidence.

## III. CONCLUSION

Zapata and Jaramillo's petition for review of the BIA decision denying their claims for asylum and withholding of removal must fail, even under the

recently enacted REAL ID Act. First, we lack jurisdiction to review the finding that Zapata failed to show changed or extraordinary circumstances to allow an extension of the filing deadline for her asylum petition. Second, substantial evidence supported the denial of withholding of removal. Accordingly, the petition is **DISMISSED** in part and **DENIED** in part.