[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11421
Non-Argument Calendar

_____

BIA Nos.
A97-189-880
A97-189-881


FRANSISCUS LUKMAN WIBOWO,
TAN FERONICA TANDIONO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 13, 2006)**

Before ANDERSON, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Petitioners Fransiscus Lukman Wibowo and his wife, Tan Feronica Tandiono, hereinafter "Petitioners" when referred to collectively, seek review of the Board of Immigration Appeal's ("BIA") decision affirming the Immigration Judge's ("IJ") denial of their application for withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. § 1231. Petitioners are citizens of Indonesia. They argue that Petitioner Wibowo's testimony was sufficient to establish past persecution and torture, entitling them to withholding of removal and CAT relief.

## I. BACKGROUND

Petitioners were admitted to the United States as non-immigrant visitors on December 5, 2000, with authorization to remain until June 4, 2001. They remained in the United States beyond this date and, on May 5, 2003, were each charged with removability. On March 14, 2003, Petitioners filed an application for asylum,[1] withholding of removal and CAT relief, alleging fear of persecution and torture based upon their Chinese ethnicity and Catholic religion.

Wibowo alleged that the Chinese population in Indonesia, a minority within the country, suffered persecution by Muslim's and other native Indonesians.

---

[1] Petitioners, conceding that the asylum application was untimely, withdrew their asylum claim.

Wibowo recounted six incidents of insults and/or physical assaults that he suffered while living in Indonesia. He first described an incident when, at the age of four, he was called "Cino," a racial slur for ethnic Chinese in Indonesia. Wibowo also recalled an incident that occurred in which he was knocked from his bicycle as a result of being struck by a motorcycle. Many people witnessed the incident but refused to offer any assistance to Wibowo, remarking on his Chinese ethnicity. Early in 1990, celebrants in the street during a Muslim holiday grabbed Wibowo and asked him for money. When he did not have the money they wanted, they hit Wibowo and spit on him. Then, in 1997, a motorbike with two passengers cut off Wibowo's motorbike, causing an accident. The two passengers then began hitting Wibowo. Native Indonesians also gathered around the scene; they yelled racial slurs and threatened to burn Wibowo's bike. A police officer dispersed the crowd by firing a shot into the air.

The following year, while riding his motorbike with a friend after work, Wibowo was stopped at a student demonstration and asked for his money and wallet. When he gave the attackers money, but refused to give them his wallet, they yelled a racial slur and beat Wibowo and his friend. The police again disrupted the attack and Wibowo was taken to the hospital. Wibowo obtained a visa and made a brief visit to the United States from December 1998 until March 1999, after which he returned to Indonesia. Wibowo testified that he returned to

3

Indonesia because of his father's ailing health and to marry and to bring his new bride to the United States. Upon his return to Indonesia, Wibowo experienced another incident in which a rock was thrown through the windshield of the car that he rode in with his brother and two friends. The attackers again yelled racial slurs. Wibowo's friend stopped the car, after which the attackers asked for money and began hitting the car with baseball bats and stones.

In addition to the testimony of the Petitioners, they also submitted evidentiary materials, including, *inter alia*, the Country Report on Human Rights Practices, the World Refugee Survey, the International Religious Freedom Report, the International Crisis Group, and news articles documenting hardships suffered by Chinese in Indonesia.

## II. STANDARD OF REVIEW

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA adopted the IJ's decision and added its own analysis. We, therefore, review both decisions. To the extent that the BIA's and IJ's decision was based upon a legal determination, our review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's and IJ's factual determinations are reviewed under the substantial evidence test, and we must affirm the IJ's decision "if it is 'supported by reasonable,

4

substantial and probative evidence on the record considered as a whole.'" *Al Najjar*, 257 F.3d at 1283-84 (citation omitted). To reverse the BIA's and IJ's fact findings, "we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary... .").

## III. DISCUSSION

A request for withholding of removal requires that an alien show that his life or freedom would more likely than not be threatened in his country of origin on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005). The Petitioners allege past persecution and fear of future persecution based upon their ethnicity and religion. In order to establish the necessary causal connection between the protected ground and the feared persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such [protected group status]." *See Al Najjar*, 257 F.3d at 1287 (discussing asylum claim) (quotations and emphasis omitted). "The alien bears the burden of demonstrating that it is 'more likely than not' she will be persecuted or tortured

5

upon being returned to her country. This standard is more stringent than the 'well-founded fear of future persecution' required for asylum." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (internal citations omitted).

An applicant may satisfy this burden of proof by showing either: (1) past persecution that "was, at least in part, motivated by a protected ground"; or (2) "that it is more likely than not that she would be persecuted on account of [a protected ground] upon removal to that country." *Id.* (citing 8 C.F.R. § 208.16(b)(2)). Once an alien has met this burden, withholding of removal is mandatory. *See* 8 C.F.R. § 208.16(d)(1). "The statutes governing asylum and withholding of removal protect not only against persecution by government forces, but also against persecution by non-governmental groups that the government cannot control. . . ." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

After reviewing the record and reading the parties' briefs, we conclude that substantial evidence supports the BIA's and IJ's determination that Petitioners failed to meet their burden of proof for withholding of removal. Wibowo recounted six incidents that occurred during his lifetime in Indonesia, which he alleges amounted to past persecution. While some incidents involved only ethnic slurs, at least two incidents involved assaults. Several of the incidents also involved attempts to rob Wibowo. Each incident was initiated by private individuals. Although it is likely that Wibowo was targeted because he is Chinese,

6

collectively, these incidents amount to harassment, not persecution. "[M]ere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231. Although the INA does not expressly define "persecution," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at1231 (quotations omitted). Moreover, not all exceptional or unjust treatment is persecution. *See Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000); *see also Ghaly v. I.N.S*, 58 F.3d 1425, 1431 (9th Cir. 1995) (explaining that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive"). Further, evidence showing that Wibowo has been the victim of crime does not constitute evidence of persecution. *See Ruiz*, 440 F.3d at 1258.

Petitioners' evidentiary materials also do not support a finding of past persecution or a well-founded fear of persecution upon return. Although the materials submitted by the Petitioners, including the Country Report, the World Refugee Survey, and news articles support Wibowo's testimony regarding the violence and prejudice against both Christians and ethnic Chinese in Indonesia, the bulk of this evidence relates to the conflict between Muslims and Christians in areas of the country other than Surabaya, the Petitioners' former home. Further, there is no evidence to indicate that the Petitioners could not relocate to another area of the country where they would not face the harassment and intimidation that

7

they have alleged. "An alien cannot demonstrate that [he] more-likely-than-not would be persecuted on a protected ground if the [Immigration Judge] finds that the alien could avoid a future threat by relocating to another part of [his] country." *Tan*, 446 F.3d at 1375.

Moreover, the Petitioners' claim of persecution is contradicted by testimony that Wibowo's brother and Tandiono's parents, brother, and two sisters continue to live unharmed in Indonesia. Aside from one of Tandiono's sisters being mugged,[2] the record does not contain any evidence that Wibowo's and Tandiono's families have suffered harm in Indonesia. *Cf. Ruiz*, 440 F.3d at 1259 (concluding that an alien did not establish a well-founded fear where, among other things, his family continued to live in Colombia without incident).

Finally, Wibowo failed to provide any examples of how he was harmed due to practicing Catholicism. Tandiono's testimony indicated that she did not practice Catholicism in Indonesia, but has recently attended a Catholic church. In either case, Tandiono testified that she had not suffered any harm in Indonesia because of her religion. Thus, Petitioners have failed to prove past persecution or fear of future persecution based upon their ethnicity or religion.

In order to obtain CAT relief, the burden is on the applicant to establish that it is "more likely than not" that he will be tortured in the country of origin. 8

---

[2] Tandiono testified that her sister's purse was stolen.

C.F.R. § 208.16(c)(2).  Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).  "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."  8 C.F.R. § 208.18(a)(2).  The Petitioners presented no evidence that they have been or would be tortured upon their return to Indonesia by a public official or with a public official's acquiescence.  The incidents recounted by Wibowo were committed by private individuals; there was no evidence that government officials were involved.  Moreover, Indonesian police disrupted at least two of the assaults.  Therefore, the denial of CAT relief was supported by substantial evidence.

For the foregoing reasons, the record does not compel the conclusion that Petitioners have suffered past persecution or torture or have a well-founded fear of suffering such if they return to Indonesia.  Accordingly, we deny the petition for review.

**PETITION DENIED.**